**Jim JOYCE, a/k/a James Joyce, Plaintiff–Appellant,**

v.

**James E. ELLIOTT, Jr., Lien Claimant–Appellee.**

No. 92CA0518.

Colorado Court of Appeals, Div. III.

June 17, 1993.

Rehearing Denied July 29, 1993.

**550**

John C. Schaefer, Denver, for plaintiff-appellant.

The Elliott Law Offices, Mark D. Elliott, Arvada, for lien claimant-appellee.

Opinion by Judge CRISWELL.

Plaintiff, Jim Joyce, a/k/a James Joyce, appeals from the judgment of the trial court enforcing an attorney's lien in favor of James E. Elliott, Jr. (attorney), and directing that a portion of the proceeds being held in the court's registry be delivered to the attorney. We reverse and remand the cause to the trial court for dismissal of the attorney's lien claim.

On April 15, 1985, plaintiff and the attorney entered into a contingency fee agreement pursuant to which the attorney agreed to represent plaintiff with respect to certain alleged claims arising as a result of plaintiff's purchase of cattle that were later discovered to be diseased.

The attorney is licensed to practice in Colorado, and the litigation involved had

its genesis in Colorado. As a result, this agreement is governed by the Rules Governing Contingent Fees, C.R.C.P. ch. 23.3. These rules establish certain criteria that each such agreement must meet, and any agreement not in "substantial compliance with all of the provisions" of these rules cannot be enforced. C.R.C.P. ch. 23.3, Rule 6.

These rules require, among other things, that any prospective client be advised of the nature of other types of fee arrangements, such as one based upon an hourly rate, before a contingency agreement may be entered into. C.R.C.P. ch. 23.3, Rule 4(a). In addition, each such agreement must be in writing and executed in duplicate, and the client must be provided with an executed copy of the agreement. C.R.C.P. ch. 23.3, Rule 4(b).

There are several specific subjects that must be addressed by the written agreement. Such subjects include a "statement of the contingency upon which the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney," a statement of the precise percentage of the total recovery that is to be paid to the attorney, and a maximum limitation upon the amount of expenses to be incurred without the client's further written authority. C.R.C.P. ch. 23.3, Rule 5.

The agreement entered into by the parties here set forth the nature of the services to be rendered by the attorney, provided a schedule of the percentages to be paid to the attorney, noted that the client was to pay an initial $1,000 as an "advance" to be applied toward fees, and established a $5,000 maximum limitation upon the amount of expenses the attorney could incur without further written authority from the client. In addition, it contained the following provisions:

The client may terminate this Contingent Fee Agreement by notifying the attorney in writing. If permission for withdrawal is required by the rules of any Court, the attorney shall withdraw upon permission of the court. The client shall pay the attorney a fee based upon time and effort for services rendered to the date of the attorney's receipt of the client's letter of termination. The fees shall be calculated at the rate of One Hundred Fifty Dollars ($150.00) per hour based upon the time records maintained by the attorney. Such fees shall be payable only if the client is successful in obtaining a recovery in the matter. All expenses and disbursements shall be paid to the attorney immediately at the time of letter of termination, regardless of whether recovery is obtained.

. . . .

This Contingent Fee Agreement contains the entire Agreement of client and attorney regarding the attorney's employment. This Agreement shall not be modified or revoked except by written agreement signed by client and attorney.

Plaintiff has not provided to this court a reporter's transcript of the evidentiary hearing held before the trial court. However, neither party has challenged the legal sufficiency of that court's findings of fact. Those findings reflect the following:

From April 1985 through April 1990, the attorney expended some 120 hours of work on plaintiff's behalf, although a considerable portion of this time was for reviewing documents, correspondence, orders and similar matters, telephone conferences, and correspondence, "which did not significantly further the prosecution of the plaintiff's case." Moreover, there was no action taken in court upon the client's case during calendar years 1988 and 1989.

In February 1990, the court issued an order to show cause why plaintiff's claims should not be dismissed for failure to prosecute. The attorney filed a response to this order, and the order was discharged on March 20, 1990.

On April 6, 1990, the attorney filed a motion for the court to authorize his withdrawal because of "an irreconcilable conflict." This motion did not assert that plaintiff had requested in writing that the attorney withdraw, and the court found that the client had made no such request. Rather, the court found that the attorney

was not required to withdraw, and while the client was seeking to have the attorney continue to represent him, the attorney himself terminated the contingent fee agreement on April 5, 1990, on the same day that he sought court permission to withdraw.

The attorney's motion to withdraw made no reference to any claim for fees. In accordance with C.R.C.P. 121, § 1–1(2), the attorney provided proper notice of his requested withdrawal to plaintiff and advised plaintiff of his right to object to such withdrawal. Plaintiff filed no objections to such request.

Sometime after the court entered an order authorizing the attorney's withdrawal, plaintiff apparently settled the claims upon which the attorney had previously represented him. However, the record on appeal does not establish the amount of any such settlement.

Thereafter, in October, 1990—some six months after the order authorizing his withdrawal was entered—the attorney filed an attorney's lien under § 12–5–119 and § 12–5–120, C.R.S. (1991 Repl.Vol. 5A). He sought recovery of reasonable attorney fees, based on an hourly rate, under the principles of *quantum meruit.*

Initially, the trial court concluded that, by voluntarily withdrawing from his representation of plaintiff, the attorney had waived any right to compensation under the agreement. Upon reconsideration, however, the court concluded that plaintiff, by not objecting to the attorney's withdrawal, had consented to the mutual abandonment of the contingency fee agreement, and as a result, the attorney was entitled to recover a reasonable fee under the precepts established by *Mutter v. Burgess,* 87 Colo. 580, 290 P. 269 (1930) and *Ownbey v. Silverstein,* 69 Colo. 325, 194 P. 607 (1920). We conclude that the trial court's initial denial of the attorney's claim was the proper result.

■ We accept the proposition that, as a general rule, if the parties to a retainer agreement mutually agree to abandon that agreement, the attorney is entitled to be compensated, not under that agreement but under *quantum meruit,* for the reasonable value of the services rendered by that attorney. The attorney's recovery under such circumstances is limited to the total amount of fees called for by the retainer agreement. *See Ownbey v. Silverstein, supra.*

■ We conclude, however, that this general rule is not applicable to the abandonment of a contingency fee agreement governed by C.R.C.P. ch. 23.3, unless the agreement, or some later written agreement between the parties, establishes the client's obligation to pay fees under such circumstances.

■ It is evident from the provisions of C.R.C.P. ch. 23.3 that one of the principal purposes of the rules respecting contingency fee agreements is to assure that a client is fully advised at the time such agreement is executed of all of the financial obligations that such client is assuming by the establishment of the attorney client relationship. Thus, these rules specifically require that the agreement set forth the amount of compensation, expressed as a percentage of the proceeds received by the client, to which the attorney shall be entitled, as well as the maximum additional amount that the client must pay, in the absence of further specific authorization, for litigation expenses. C.R.C.P. ch. 23.3, Rule 5(d), is also specific in requiring the agreement to set forth all other circumstances in which the client will be required to pay compensation to the attorney, other than as a part of the contingency fee. And, if the retainer agreement does not substantially comply with this requirement, it is not enforceable.

■ Given this clear purpose for these rules, we conclude that to allow an attorney to recover a fee, when that attorney has voluntarily and without cause withdrawn from his representation, absent a provision in the contingency fee agreement providing for such payment, would violate the spirit, if not the letter, of C.R.C.P. ch. 23.3.

■ Here, the agreement specifically prohibited any revocation of the agree-

ment, except by a writing signed by both the client and the attorney. It is true that the client could have terminated the agreement by notifying the attorney in writing and that, under those circumstances, the client would have been obligated to pay the attorney a reasonable fee for his prior services, based upon an hourly rate. Significantly, however, the agreement did not authorize the attorney voluntarily to withdraw his representation, except, possibly, if his withdrawal were "required by the rules of any court...." Moreover, nothing within this agreement advised the client that, if the agreement were voluntarily terminated by the attorney, the client would also be liable for attorney fees, based on an hourly rate.

Given these circumstances, therefore, we conclude that, because the contingency fee agreement did not place the client on notice that a fee would be payable in the event of the attorney's voluntary withdrawal without cause, the award of fees based upon *quantum meruit* here would violate the policy underlying C.R.C.P. ch. 23.3 and, hence, cannot be sustained.

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the attorney's lien claim with prejudice.

JONES and ROTHENBERG, JJ., concur.