James E. ELLIOTT, Jr., Petitioner,

v.

Jim JOYCE, a/k/a James M. Joyce, Respondent.

No. 93SC528.

Supreme Court of Colorado, En Banc.

Nov. 7, 1994.

The Elliott Law Offices, Mark D. Elliott, Arvada, for petitioner.

E. Ronald Beeks, Evergreen, for respondent.

Justice SCOTT delivered the Opinion of the Court.

We granted certiorari in *Joyce v. Elliott*, 857 P.2d 549 (Colo.App.1993), to decide whether our rules of procedure governing contingent fee agreements prohibit recovery in *quantum meruit* by an attorney from a former client, without express provision in the contingent fee agreement. The court of appeals reversed the trial court's judgment enforcing an attorney's lien in favor of James E. Elliott, Jr., an attorney, against Mr. Elliott's client, James Joyce. Because the contingent fee agreement did not contain a statement indicating the client would be liable to pay compensation to the attorney under the particular circumstances by which the attorney-client relationship was terminated, we affirm.

## I

On April 15, 1985, respondent, James Joyce (client), entered into a contingent fee agreement to retain the services of petitioner, James E. Elliott (attorney), to represent him in a legal action involving the purchase of cattle. The fee agreement set forth the nature of the services to be rendered by the attorney, provided a schedule of the percentages to be paid to the attorney, noted that the client was to pay an initial amount of $1000 as an "advance" to be applied toward fees, and established a $5000 maximum limitation upon the amount of expenses the attorney could incur without further written authority from the client. In addition, the agreement contained the following provisions:

> The client may terminate this Contingent Fee Agreement by notifying the attorney in writing. If permission for withdrawal is required by the rules of any Court, the attorney shall withdraw upon permission of the court. The client shall pay the attorney a fee based upon time and effort for services rendered to the date of the attorney's receipt of the client's letter of termination. The fees shall be calculated at the rate of One Hundred Fifty Dollars ($150.00) per hour based upon the time records maintained by the attorney. Such fees shall be payable only if the client is successful in obtaining a recovery in the matter. All expenses and disbursements shall be paid to the attorney immediately at the time of letter of termination, regardless of whether recovery is obtained.
>
> . . . .
>
> This Contingent Fee Agreement contains the entire Agreement of client and attorney regarding the attorney's employment. This Agreement shall not be modified or revoked except by written agreement signed by the client and attorney.

From April 1985 through April 1990, Elliott expended approximately 120 hours of his time on the client's behalf. On April 6, 1990, Elliott filed a motion for the court to authorize his withdrawal because of "an irreconcilable conflict." The motion to withdraw made no reference to any claim for fees and, in accordance with C.R.C.P. 121, § 1–1(2), 7A

C.R.S. (1990), Elliott provided proper notice of his motion to withdraw and advised Joyce of his right as a client to object to such withdrawal. Joyce did not object and by order dated April 25, 1990, the trial court authorized Elliott's withdrawal. After Elliott's motion to withdraw was granted, Joyce retained new counsel who was able to settle the litigation. After the matter was settled, Elliott filed an attorney's lien under section 12–5–119 and section 12–5–120, 5A C.R.S. (1991), seeking recovery of attorney fees in the amount of $17,936.67 based on time and effort for services rendered, under the theory of *quantum meruit*. On November 8, 1990, the trial court accepted "the proceeds of the settlement ... in the amount of $20,-000 ... to be held by the court until James Elliott's attorney's lien question is resolved."

Initially, by order dated October 15, 1991, the trial court found that "Mr. Elliott himself terminated the Contingent Fee Agreement," concluded that, by voluntarily withdrawing, Elliott "gave up any right he may have had under [the contingent fee] agreement to collect a fee," and discharged the attorney lien claimed by Elliott. In response, Elliott filed a motion for post-trial relief.

The trial court treated Elliott's motion for post-trial relief as raising "[t]he additional issue [of] whether Mr. Elliott is entitled to recovery of a fee independent of [the contingent fee agreement], based upon a *quantum meruit* or unjust enrichment theory." Relying solely upon two cases, *Mutter v. Burgess*, 87 Colo. 580, 290 P. 269 (1930), and *Ownbey v. Silverstein*, 69 Colo. 325, 194 P. 607 (1920), the trial court ruled that Elliott "has an enforceable attorney's lien in the amount of $8,186.67." In reaching its conclusion, the trial court made "additional findings" material here. In its order dated December 20, 1991, the trial court determined that Elliott "was not required to withdraw, but elected to do so," and that by not objecting to his attorney's withdrawal, Joyce "consent[ed] to the withdrawal." Finally, the trial court ruled that "when a contract has been abandoned by the parties, the attorney may recover, upon an implied contract." The trial court's orders do not refer to our rules governing contingent fee agreements under

chapter 23.3, and the record does not reflect whether the parties ever raised either Rule 5(d) or Rule 6 before that court and we assume they did not.

The court of appeals reversed the ruling of the trial court, finding that where an attorney voluntarily withdraws from representation, his or her client is not obligated to pay the attorney "unless the [fee] agreement, or some later written agreement between the parties, establishes the client's obligation to pay fees under such circumstances." *Joyce v. Elliott*, 857 P.2d 549, 552 (Colo.App.1993). The court of appeals found no such express provision in the Contingent Fee Agreement and thus dismissed the attorney's lien.

We granted Elliott's petition for certiorari to determine "[w]hether C.R.C.P. ch. 23.3, Rule 5(d) (Rules Governing Contingent Fees) prohibits recovery in *quantum meruit* when the parties to a contingent fee agreement have abandoned that agreement." Because our rules prohibit a recovery unless the fee agreement specifically states otherwise, we affirm the judgment of the court of appeals.

## II

### A

In Colorado, Contingent Fee Agreements are limited by our Rules Governing Contingent Fees, C.R.C.P. ch. 23.3. In 1979, we adopted chapter 23.3 consistent with our general supervisory power over attorneys in order to regulate the conduct of attorneys in the attorney-client relationship and to protect the public.

Among other matters, chapter 23.3 specifically requires that a contingent fee agreement set forth the amount of compensation to which the attorney shall be entitled, expressed as a percentage of the proceeds received by the client, and the amount the client must pay for expenses. C.R.C.P. ch. 23.3, Rule 5. Chapter 23.3, which is comprised of several rules, also mandates that each contingent fee agreement include "a statement of the contingency upon which the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney." C.R.C.P. ch. 23.3,

Rule 5(d). In essence, chapter 23.3 is self-enforcing; the sanction for noncompliance by attorneys is the inability to enforce payment by clients. As set forth in Rule 6, "[n]o contingent fee agreement shall be enforceable by the involved attorney unless there is substantial compliance with all of the provisions of this rule." Thus, an attorney who fails to comply with the rules may be barred from recovering any unpaid legal fees, whether expressly provided for or otherwise contemplated.

### B

Elliott argues that nothing in chapter 23.3 prohibits *quantum meruit* recovery where, as here, there is a mutual abandonment of a contingency agreement. Focusing on the trial court's finding of mutual abandonment, Elliott reasons that the instant scenario is analogous to situations in which an attorney has provided services in the absence of an express contractual agreement. In those cases, he posits, courts have been inclined to grant *quantum meruit* recovery. *See, e.g., Murdock v. Cohen*, 762 P.2d 691, 692–93 (Colo.App.1988) (awarding *quantum meruit* recovery in absence of express agreement); *In re Marriage of O'Brien*, 759 P.2d 826, 828 (Colo.App.1988) (same). Finally, Elliott urges us to adopt the "modern trend" that an attorney who withdraws from a case or otherwise abandons his or her employment for a justifiable cause may recover compensation for his or her services actually rendered, while an attorney who withdraws without a justifiable cause loses the right to a fee, and may not recover either on the contract or in *quantum meruit*. *See, e.g., Zaklama v. Mt. Sinai Medical Ctr.*, 906 F.2d 650 (11th Cir. 1990); *Estate of Falco*, 188 Cal.App.3d 1004, 233 Cal.Rptr. 807 (1987); *Hensel v. Cohen*, 155 Cal.App.3d 563, 202 Cal.Rptr. 85 (1984); *Kopplow & Flynn, P.A. v. Trudell*, 445 So.2d 1065 (Fla.Dist.Ct.App.1984); *Covington v. Rhodes*, 38 N.C.App. 61, 247 S.E.2d 305 (1978).

We agree with Elliott that, under general contract law, the existence of an express contract does not preclude *quantum meruit* recovery and that generally, a claim for *quantum meruit* exists independently

from any contract claim. *See Denver Ventures Inc. v. Arlington Lane Corp.,* 754 P.2d 785, 787 (Colo.App.1988). However, we decline the invitation to look to case law from other jurisdictions or to rely solely upon our case law prior to the adoption of chapter 23.3. Chapter 23.3, which governs here, has express provisions that should control and they provide sufficient guidance under the present facts.

Our rules under chapter 23.3 regulate contingent fee agreement contracts and Rules 5(d) and 6 limit *quantum meruit* under the attorney-client relationship. Rule 5(d) provides, in material part, that "each contingent fee agreement shall contain ... a statement of the contingency upon which a client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney...." Rule 6 sets forth the "sanction for non-compliance," providing "no contingent fee agreement shall be enforceable by the involved attorney unless there has been *substantial compliance with all* of the provisions of [chapter 23.3]."

■ Elliott's contingent fee agreement includes the required statement of the contingencies upon which the client is to be liable, as required by Rule 5(d). However, other than recovery for amounts collected by Elliott (a contingency not applicable due to Elliott's withdrawal), the agreement otherwise only provides for client liability when the client terminates the agreement. Mutual abandonment or voluntary withdrawal by the attorney is not a contingency expressly provided or contemplated by the express terms of the fee agreement. Thus, although it specifically provides that the client must pay the attorney a fee based upon time and effort for services rendered if the *client* terminates the fee agreement, the fee agreement is silent as to liability when either Elliott unilaterally terminates the agreement or Elliott and Joyce mutually terminate the agreement. Hence, pursuant to Rule 6, by failing to expressly include a contingency as required to be set forth by Rule 5(d), Elliott cannot enforce payment by Joyce. Moreover, such a result is consistent with the idea that expression in a contract of one or more things of a class implies exclusion of all not expressed. *Denver Joint Stock Land Bank of Denver v. Markham,* 106 Colo. 509, 107 P.2d 313 (Colo.1940).

■ Within the obligations and duties of performance under a contract, a court is without authority to compel a party to do something he or she did not contract to do. *Bowman v. Reyburn,* 115 Colo. 82, 170 P.2d 271 (Colo.1946). Under the fee agreement in question, Joyce only contracted to pay legal fees to Elliott in the event Joyce unilaterally terminated the contingent fee agreement. Although Rule 5(d) does not prohibit *per se quantum meruit* recovery, we hold that under our Rules 5(d) and 6, chapter 23.3 limits recovery to situations in which the contingent fee agreement specifically sets forth circumstances under which the client will be liable.

■ Our holding in this case is supported by general rules of contract construction that require that all ambiguities should be strictly construed against the party drafting the contract. *See Green Shoe Mfg. Co. v. Farber,* 712 P.2d 1014 (Colo.1986). This principle is consistent with our rules regarding contingent fee agreements. Moreover, when regulating the conduct of attorneys and interpreting fee agreement contracts, courts have been consistent in construing any ambiguity against the attorney who drew the agreement and liberally in favor of the client. *See* Samuel Williston, *Williston on Contracts* § 1285A, at 931 (citing cases). To the extent a fee agreement is ambiguous, it should be construed in favor of the client.

Finally, by our holding today we do not disapprove of contingent fee arrangements permitting recovery by attorneys from clients in *quantum meruit.* However, in order to enforce such agreements, a client's liability must be expressly provided within the written contingent fee agreement, as required by our rules. We agree with the court of appeals that to allow an attorney to recover a fee, when the attorney has voluntarily withdrawn from his representation, absent a provision in the contingent fee agreement providing for such payment, would violate the spirit and the letter of C.R.C.P. ch. 23.3.

### III

We find that pursuant to our rules governing contingent fee agreements a client is not required to compensate an attorney other than pursuant to contingencies expressly set forth in the fee agreement. Therefore, we affirm the judgment of the court of appeals.