### The PEOPLE of the State of Colorado, Complainant,

v.

### Steven W. HICKOX, Attorney–Respondent.

### No. 94SA436.

Supreme Court of Colorado, En Banc.

Jan. 17, 1995.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Asst. Disciplinary Counsel, Denver, for complainant.

Steven W. Hickox, pro se.

PER CURIAM.

This attorney discipline case comes to us on a stipulation, agreement, and conditional admission of misconduct entered into between the respondent [1] and the assistant disciplinary counsel. In the stipulation, the parties recommended the imposition of a public censure. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation, with the recommendation that the respondent receive a public censure. We accept the stipulation and the recommendation of the inquiry panel.

### I

The stipulation contained the following facts. In December 1990, the respondent was hired by a client (the complaining witness), to collect on two judgments against the client's ex-husband totalling about $19,450 and representing arrearages in court-ordered maintenance payments. The respondent and the client agreed that the respondent would receive one-third of the net amount collected after the respondent's collection costs were deducted.

The respondent decided to seize the ex-husband's wine collection, which he believed to be worth approximately $50,000. The client had a list of the wine awarded to her ex-husband in the dissolution and which was kept in a specially constructed wine cellar. The client was not able to obtain a sheriff's

---

1. The respondent was admitted to the bar of this court on May 15, 1981, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

bond to seize the wine, so the respondent had the client assign the judgments to him on January 4, 1991. The respondent then obtained a sheriff's bond issued in his name.

On February 7, 1991, the respondent and his client, accompanied by the respondent's investigator, two Denver Deputy Sheriffs, and another person, went to the ex-husband's office with a writ of execution and notice of levy. The respondent directed his agents to carry out the cases of wine over the ex-husband's objection. Two other persons, a woman and a man, also kept wine in the cellar and told the respondent that he was taking their wine, but the wine was removed over their protests. Wine that was not on the client's list was taken from the cellar. After the seizure, the man produced receipts showing the wines that he owned and the respondent returned this wine to him. The woman gave the respondent a list of wines that she claimed, but she did not have receipts, and the respondent returned no wine to her. The respondent's client instructed him to return all of the wine because she believed that very little of the wine seized belonged to her ex-husband. The respondent initially refused, but later relented and tried to return the wine, but the woman refused to accept it. Instead, she filed a civil action against the respondent and his client to recover the value of the wine, but a jury decided in favor of the respondent and his client, possibly because the respondent's attempts to return the wine were rejected.

The respondent held a sheriff's sale of the wine, complying with legal notice requirements. The respondent's fiancee purchased the wine for $200.00, which was less than its supposed worth. The respondent applied the amount received against the unpaid costs of collection that he claims to have incurred. However, the respondent did not notify either his client or the woman who had claimed the wine of the sale, or its outcome. The client wrote to the respondent in October 1991, requesting an accounting of the funds received and disbursed in her case. In reply, the respondent did not disclose the buyer or the results of the wine sale, but reminded the client that she still owed him collection costs.

The legality of the sale has not been challenged. The respondent asserts that he was trying to comply with the demands of his client and of the other woman by retaining control over the wine. He also wanted to maintain control over the wine as evidence in case the woman continued to refuse its return.

The client's ex-husband deposited a cashier's check for $3,500 with the court in June 1991, made out to the respondent and the client. On January 5, 1992, the court ordered that the check be released to the respondent "for distribution pursuant to the agreement between [the respondent and the client]." Two days later, the respondent deposited the $3,500 check in his trust account. Although the check contained what purported to be the client's endorsement, the client did not sign the check. When he deposited the check, the respondent knew that the signature was not that of his client. The assistant disciplinary counsel has stipulated, however, that, although the signature on the check is a forgery, it is "impossible to establish that respondent forged" the signature. The respondent held the $3,500 in his trust account, except for $1000 he paid to his investigator.

The respondent's client had filed for bankruptcy in the fall of 1991, and the bankruptcy court subsequently found that the contingency fee agreement between the respondent and the client was valid, and the court allowed a total of $2,266.85 for the respondent's legal fees and remaining unpaid costs to be set off against the $3,500.00. The bankruptcy court disallowed the $1000 payment to the investigator, however. The respondent was ordered to pay the amount remaining of the $3,500 to the trustee, and he did.

The respondent admitted that he violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) by depositing the $3,500 check into his trust account, knowing that his client had not endorsed it. In addition, he violated the disciplinary rule by not advising his client of the sheriff's sale, and of the results of the sale, including the identity of the purchaser.

The respondent also stipulated that his conduct violated DR 5–101(A) (a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests). The respondent had his client assign the two judgments to him, creating a conflict when the client wanted the seized wine to be returned. Without the client's consent, the respondent had the wine sold to his fiancee, presumably for less than its worth. The respondent therefore put his own financial interest in collecting his fee ahead of his duty to his client. The assistant disciplinary counsel indicates, however, that the respondent's failure to perceive and understand the conflicts presented was the result of negligence.

Moreover, the respondent violated the following disciplinary rules: DR 9–102(B)(1) (a lawyer shall promptly notify a client of the receipt of the client's funds, securities or other properties) by failing to notify the client of the receipt of the proceeds of the sale of the wine; DR 9–102(B)(3) (failure to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property); and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive).

Although the respondent failed to provide appropriate accountings of the funds, the assistant disciplinary counsel has stipulated that there are no allegations that the respondent improperly disbursed any funds. Moreover, "respondent was sloppy in his bookkeeping which caused accounting problems, but the funds were properly maintained."

## II

In the stipulation, the parties recommended that the respondent receive a public censure for his misconduct. The inquiry panel approved the stipulation, including the recommendation of a public censure. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating or aggravating factors, public censure is generally warranted "when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests … and causes injury or potential injury to a client." *Id.* at 4.33. Similarly, public censure is appropriate "when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *Id.* at 4.13. Finally, public censure is warranted "when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." *Id.* at 5.13.

With respect to aggravating factors, the board found that the respondent had previously received two admonitions, *id.* at 9.22(a); that there was a pattern of misconduct, *id.* at 9.22(c); the existence of multiple offenses, *id.* at 9.22(d); and that the respondent has substantial experience in the practice of law, *id.* at 9.22(i). In mitigation, the respondent has been open and cooperative throughout the disciplinary proceedings, *id.* at 9.32(e); and has exhibited remorse for his misconduct, *id.* at 9.32(*l* ). The assistant disciplinary counsel also points out that the client has filed a legal malpractice claim against the respondent, and that any pecuniary harm that the client suffered as a result of the respondent's representation can be addressed in that forum. *Cf. id.* at 9.32(k) (the imposition of other penalties or sanctions is a mitigating factor).

Given the multiple offenses, it is a close question whether a public censure or a period of suspension is appropriate. On balance, given that the respondent's predominant mental state was one of negligence, and given the absence of actual harm that has been demonstrated, *see id.* at 3.0(b), (c), we conclude that a public censure is a sufficient disciplinary sanction. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct. Nevertheless, some members of the court would have rejected the stipulation because the recommended sanction was too lenient.

## III

It is hereby ordered that Steven W. Hickox be publicly censured. It is further or-

dered that the respondent pay the costs of this proceeding in the amount of $49.02 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.