Richard DUDDING, Petitioner,

v.

NORTON FRICKEY & ASSOCIATES, a Delaware corporation, Respondent.

No. 99SC403.

Supreme Court of Colorado,
En Banc.

Oct. 10, 2000.

Roberta Earley, Colorado Springs, Colorado, Attorney for Petitioner.

Norton Frickey & Associates, Robert B. Carey, Dawn R. Kubik, L. Dan Rector, Colorado Springs, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This case concerns the interrelationship between a contingency fee agreement and an attorney's request for quantum meruit recovery. Richard Dudding (Dudding) hired Norton Frickey & Associates (Frickey) to litigate a wrongful termination of employment claim on his behalf. Dudding and Frickey entered into a contingency fee agreement setting out the conditions of payment for Frickey's services. Ultimately, Dudding terminated Frickey's services and Frickey filed an attorneys' lien against the proceeds of Dudding's wrongful termination lawsuit, and also sought in a separate proceeding to compel arbitration of the fee dispute.

The trial court that heard the request for arbitration found the contingency fee agreement void and unenforceable for failure to comply with the Colorado Rules of Civil Procedure Governing Contingency Fees. In the employment termination case, the trial court denied Frickey any recovery, both under the terms of the agreement and on a theory of quantum meruit.

The court of appeals reversed in an unpublished opinion. *See Dudding v. Kaman Sciences, Inc.*, No. 97CA2066 (Colo.App. Mar. 11, 1999) (not selected for official publication). The court of appeals held that Frickey should be allowed to proceed on a quantum meruit claim, despite the deficiencies in the contingent fee agreement.

We accepted certiorari.[1] We now affirm the court of appeals in part and reverse in

---

1. We accepted certiorari on two issues:

(1) Whether the court of appeals erred in de-

part. We hold that an attorney may proceed on a quantum meruit claim if that eventuality is outlined in the contingency fee agreement, even if the agreement contains other deficiencies and is unenforceable for purposes of the contingency. Language in a contingent fee agreement notifying the client that, upon termination, the attorney may seek recovery based on a predetermined hourly rate provides insufficient notice of the possibility of equitable relief. Therefore, in this case, Frickey is not entitled to recover quantum meruit payment.

## I.

In August 1995, Dudding retained Frickey to represent him on a claim of wrongful termination against his employer Kaman Sciences, Inc. Dudding and Frickey entered into a written contingency fee agreement that set out the terms and conditions of payment from Dudding to Frickey. The agreement did not address what would happen in the event that Dudding accepted reemployment with Kaman in lieu of, or in addition to, any damages.[2]

Frickey filed suit on Dudding's behalf, case number 95CV2105, in El Paso County District Court. Dudding engaged in settlement negotiations without Frickey's assistance; and Dudding and the employer ultimately agreed to settle the lawsuit in exchange for reinstating Dudding to a comparable position within the company at the same salary, benefits, and terms of employment. On August 27, 1996, Frickey wrote a letter to Dudding stating that Dudding's reemployment with Kaman resulted from the fruit of Frickey's legal labor and should be valued for purposes

of computing Frickey's one-third contingency fee. Dudding strongly objected to the notion of Frickey's entitlement to one-third of Dudding's first year's salary and immediately terminated Frickey's representation of him.

On October 29, 1996, Frickey filed a separate lawsuit, also in El Paso County District Court, case number 96CV2542. The suit sought an order compelling arbitration of the fee dispute pursuant to section 13–22–204, 5 C.R.S. (1999), and paragraph 12 of the fee agreement, which provided that "[i]n the event a dispute arises over this Agreement, the parties agree to submit this matter to arbitration."

Contemporaneously, on November 20, 1996, Frickey filed an attorneys' lien, case number 95CV2105, against any settlement or judgment arising out of the underlying lawsuit in the amount of $22,713.22. Frickey calculated the amount based on one-third of Dudding's first year's salary, plus costs.

Dudding filed a motion to dismiss the arbitration request alleging, among other things, that the fee agreement was void and unenforceable. On June 7, 1997, Judge Theresa Cisneros ruled that the contingency fee agreement between Dudding and Frickey did not substantially comply with Chapter 23.3 of the Colorado Rules of Civil Procedure Governing Contingent Fees, because it did not disclose the nature of other types of fee arrangements, the nature of expenses, the potential for an award of costs and attorneys' fees to the opposing party, what is meant by associated counsel, what is meant by subrogation, and did not set out that the attorney could recover one-third

---

termining that *Elliott v. Joyce,* 889 P.2d 43 (Colo.1994) did not bar recovery on an attorneys' lien on the basis of quantum meruit after the contingent fee contract between the client and attorney had been deemed not to be in substantial compliance with the Rules Governing Contingent Fees?
(2) Whether recovery on the basis of quantum meruit is barred when a fee agreement is in substantial noncompliance with the Rules Governing Contingent Fees?

2. The agreement did contain language permitting recovery in the event of termination. Specifically, the agreement required that if the client terminated or repudiated the agreement, he must:

immediately reimburse Attorney for all outstanding costs and expenses incurred by Attorney in Client's matters and, in addition, shall immediately compensate Attorney for the services it has performed on behalf of client in an amount equal to the greater of (1) the value of the services based on the hourly rate specified in Paragraph 5 hereof, or (2) the product resulting from multiplication of the last settlement offer and the percentage contained in Paragraph 3 hereof.
If Frickey terminated the agreement, it could only "recover costs expended" by enforcing a retaining lien on the Client's case and/or file.

of the Defendant's salary in the event the Defendant were reinstated at his job.

Accordingly, Judge Cisneros concluded that the void contingent fee agreement rendered the arbitration clause void and granted Dudding's Motion to Dismiss.

On June 24, 1997, counsel for Dudding filed a motion in the underlying case, case number 95CV2105, to strike the attorneys' lien because of Judge Cisneros's determination that the contingency fee agreement was void. Frickey opposed striking the lien, asserting that given the ruling on the contingency fee agreement, quantum meruit based upon the legal services actually provided constituted the appropriate measure of damages. Simultaneously, Frickey filed an amended lien claiming quantum meruit recovery.

On July 30, 1997, Judge Michael Heydt granted Dudding's motion to strike the attorneys' lien. Judge Heydt concluded that Frickey could not enforce the lien as a matter of law, because: (1) another court had declared it void, and this ruling bound subsequent courts under principles of collateral estoppel; and (2) the agreement did not include any provision detailing the client's responsibilities in the event the agreement was declared unenforceable. Therefore, Judge Heydt found the agreement void because it failed to disclose the particular circumstances that occasioned Frickey's request for payment.

Frickey and Dudding stipulated to the deposit of monies into escrow, pending a final ruling on Frickey's appeal. Frickey released Kaman from all liability under the lien, and Dudding and Kaman entered into a dismissal with prejudice of the underlying lawsuit.

Frickey then appealed Judge Heydt's ruling to the court of appeals. That court reversed the trial court, holding that Frickey may proceed on the quantum meruit claim. *See Dudding v. Kaman Sciences, Inc.,* No. 97CA2066. Specifically, the court of appeals determined that the deficiencies of the contingency fee agreement did not vitiate the law firm's right to pursue quantum meruit, but rather existed independently of that agreement. The court concluded that recovery in quantum meruit depended upon whether Dudding terminated Frickey without cause, and remanded to the trial court for further proceedings on that point. The court of appeals also ruled that because the parties did not bring the issue of quantum meruit before Judge Cisneros in the context of the arbitration lawsuit, her ruling did not collaterally estop Judge Heydt from considering and ultimately granting such quantum meruit recovery.

Justice Erickson, sitting as a senior judge assigned to the court of appeals, dissented. He opined that Judge Cisneros's decision holding the agreement void for failure to comply with the Rules governing contingent fees foreclosed any consideration of the quantum meruit claim.

## II.

The questions on certiorari ask us to determine whether a request for quantum meruit recovery is valid when the contingent fee agreement does not substantially comply with the Rules Governing Contingent Fees. We hold that quantum meruit recovery can exist independently of a contract—even a nonconforming contract—so long as the attorney provided some initial notice to the client of his option to seek such equitable recovery.

### A.

Quantum meruit is a theory of contract recovery that invokes an implied contract when the parties either have no express contract or have abrogated it. Application of the doctrine of quantum meruit, also termed quasi-contract or unjust enrichment, does not depend upon the existence of a contract, either express or implied in fact. Rather, it arises out of the need to avoid unjust enrichment to a party even in the absence of an actual agreement to pay for the services rendered. *See Dove Valley Bus. Park Assocs., Ltd. v. County Comm'rs of Arapahoe County,* 945 P.2d 395, 403 (Colo.1997); *Cablevision of Breckenridge v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1097 (Colo.1982).

Quantum meruit literally means "as much as [is] deserved." *Black's Law Dictionary*

1255 (7th ed.1999). Accordingly, the equitable doctrine seeks to restore fairness when a contract fails. *See Dove Valley,* 945 P.2d at 403; *see also DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 119 (Colo.1998) (stating that quantum meruit recovery springs "from the law of natural immutable justice and equity"); *Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788, 795 (Colo.1991) (finding "the concept of unjust enrichment centers attention 'on the prevention of injustice'"). Quantum meruit strikes the appropriate balance by gauging the equities and ensuring that the party receiving the benefit of the bargain pays a reasonable sum for that benefit. *See Black's Law Dictionary* 1255.

■■■ To recover in quantum meruit, a plaintiff must demonstrate that: (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See DCB Constr. Co.,* 965 P.2d at 119. A benefit denotes any form of advantage. *See Dove Valley,* 945 P.2d at 403. Whether injustice results often will turn on whether a party engaged in some type of wrongdoing. *See DCB Constr. Co.,* 965 P.2d at 122 (holding that a construction company could not recover in quantum meruit from landlord for construction services performed for tenant when there was no evidence that the landlord improperly created the impression that it would pay for the work). As a result, courts proceeding on a quantum meruit theory must engage in a highly fact-intensive inquiry.

■■■ Under some circumstances, a party to an unenforceable express contract may recover under quantum meruit. *See A.T.E., Inc. v. Nelson W. Constructors, Inc.,* 757 P.2d 151, 153 (Colo.App.1988); *Backus v. Apishapa Land & Cattle Co.,* 44 Colo.App. 59, 62, 615 P.2d 42, 44 (1980). However, courts will refuse quantum meruit recovery when expressly contrary to the provisions of the written contract between the parties. *See Stanford v. Ronald H. Mayer Real Estate, Inc.,* 849 P.2d 921, 923 (Colo.App.1993). Hence, in general, a quantum meruit claim may exist independently of a contract and need not turn on whether the contract between the parties met specified requirements.

Historically, courts applying the doctrine of quantum meruit in the context of contracts for legal services recognize that when a client discharges his or her attorney, whether or not the attorney is working under a contingent fee contract, the client remains obligated to pay the reasonable value of the services rendered, barring conduct by the attorney that would forfeit his right to receive a fee. *See Rhoades v. Norfolk & Western Ry. Co.,* 78 Ill.2d 217, 35 Ill.Dec. 680, 399 N.E.2d 969, 974 (1979). Many jurisdictions adhere to this general rule, and therefore, focus on whether the client discharged the attorney without cause or the legitimacy of the attorney's legal justification in withdrawing from the case. *See Reed Yates Farms, Inc. v. Yates,* 172 Ill.App.3d 519, 122 Ill.Dec. 576, 526 N.E.2d 1115, 1120–25 (1988).[3]

Balanced against these quantum meruit principles are the special considerations inherent in the attorney-client contractual relationship. An attorney-client relationship relies on trust and confidence between the client and the attorney. *See* C.R.C.P. 251.1. This distinguishes the attorney-client relationship from other business relationships. *See Olsen & Brown v. City of Englewood,* 889 P.2d 673, 676 (Colo.1995). The emphasis placed on these special considerations creates a somewhat different framework for the analysis of quantum meruit claims in the context of attorney-client relationships.

Further, this court requires parties to put contingent fee agreements in writing and to satisfy the requirements of Chapter 23.3 of the Rules of Civil Procedure Governing Con-

---

**3.** In cases where the attorney has been discharged, many jurisdictions will award the attorney some quantum meruit value of the services rendered before discharge. *See In re Harris,* 261 Kan. 1063, 934 P.2d 965, 972 (1997) (holding that an attorney was entitled to recover in quantum meruit when the client discharged the attorney with cause and then negotiated a settlement herself); *see also Fox & Assocs. Co. v. Purdon,* 44 Ohio St.3d 69, 541 N.E.2d 448, 450 (1989) (holding that attorney was entitled to quantum meruit recovery when discharged, regardless of whether with or without cause).

tingent Fees.[4] Rule 5 identifies the information that each contingent fee agreement must contain. Rule 6 provides that no contingent fee agreement shall be enforceable by the involved attorney unless it substantially complies with the Rules.

■ The Rules assure that clients will know the terms and conditions of payment when contracting for the attorney's services. *See, e.g .,* C.R.C.P. ch. 23.3 Rule 4. Hence, an attorney may seek a contingent fee from his client only in accordance with a valid agreement.

### B.

We have permitted quantum meruit recovery in the context of a non-contingent attorney-client contract when an attorney withdraws for a justifiable reason or a client terminates the attorney without cause. *See Olsen,* 889 P.2d at 677. In a contingent fee context, we have also allowed quantum meruit recovery by an attorney but only when the underlying agreement contemplates the availability of such recovery. *See Elliott v. Joyce,* 889 P.2d 43, 46 (Colo.1994).

In *Elliott,* the attorney and client entered into a contingent fee agreement that expressly provided if the client withdrew from the representation, the agreement obligated the client to pay the attorney an hourly fee based on the services rendered to date. *See id.* at 44. The agreement did not, however, similarly obligate the client if the attorney withdrew from the representation. After the attorney worked for some five years and expended approximately 120 hours of time, the attorney filed a motion to withdraw from representation of the client due to an "irreconcilable conflict." *See id.* The motion made no mention of fees, and the client did not specifically oppose them. The trial court permitted the attorney to recover fees on the theory that the attorney and client had effectively abandoned the fee agreement, and in that circumstance, the attorney can recover under a quantum meruit theory. *See id.*

The court of appeals reversed, finding that the client has no obligation to pay the attorney unless the written agreement between the parties establishes the client's obligation under those circumstances. *See Joyce v. Elliott,* 857 P.2d 549, 552 (Colo.App.1993). The court of appeals noted that:

> It is evident from the provisions of C.R.C.P. ch. 23.3 that one of the principal purposes of the rules respecting contingency fee agreements is to assure that a client is fully advised at the time such agreement is executed of all of the financial obligations that such client is assuming by the establishment of the attorney client relationship.

*Id.* at 552.

We then granted certiorari to decide whether the rules of procedure governing contingency fee agreements did, in fact, prohibit recovery in quantum meruit absent an express provision in the agreement contemplating such recovery. *See Elliott,* 889 P.2d at 45. We agreed with the court of appeals that quantum meruit recovery is limited in the attorney-client context (as distinguished from general contract law) to those circumstances in which the contingent fee agreement explicitly sets out that obligation. *See id.* at 46.

In *Elliott,* this court refused to disapprove of contingent fee contracts permitting recovery by attorneys in quantum meruit. Rather, we expressly held that such recovery is permissible but requires notice to the client of that possibility in the contingent fee agreement. *See id.*

We note that the Ethics Committee of the Colorado Bar Association opines that a conversion clause holding the client liable for attorney's fees under quantum meruit in the event of termination of the contingent fee agreement suffices as notice to the client of the possibility of alternative recovery by the attorney. *See* Colorado Bar Ass'n Ethics Comm., Use of Conversion Clauses in Con-

---

4. Additionally, the court recently amended the Colorado Rules of Professional Conduct to require that an attorney communicate his fees to the client in writing. *See* Colo. RPC 1.5(b) (stating "the basis or rate of the fee shall be communicated to the client in writing, before or within a reasonable time after commencing the representation"). This Rule makes no distinction between contingent fee and non-contingent fee contracts.

tingent Fee Agreements, Formal Op. 100. The Committee articulated that the flaw in the *Elliott* agreement stemmed from its failure to advise the client of the general availability of recovery under quantum meruit principles. *See id.* As long as the client has some notice of the possibility of equitable recovery should the contingency fail, the agreement cannot prohibit the attorney from seeking such recovery.

### C.

■ We agree and now conclude that neither *Elliott* nor the Rules preclude Frickey from seeking quantum meruit recovery in this case if the agreement gave sufficient notice to Dudding of that possibility. Specifically, Rule 6 provides that no *contingent* fee contract shall be enforceable absent substantial compliance with the rules governing such contracts. We do not read Rule 6 to apply to requests for quantum meruit, or to provide that the attorney is precluded from any recovery if the agreement does not comply. Further, *Elliott* merely requires the attorney to notify the client that circumstances may exist in which he or she will seek quantum meruit recovery. It neither requires that every such circumstance be set out in detail, nor precludes quantum meruit recovery if the agreement itself does not comply with the Rules for other reasons.

The majority of other jurisdictions apply standard quantum meruit contract law in the attorney-client context. These states allow an attorney to recover in quantum meruit when the attorney justifiably withdraws from a contingent fee contract or when the client discharges the attorney without cause. In those cases, courts have held that an attorney may recover the reasonable value of the services he provided up until the date of discharge or withdrawal. *See Crockett & Brown, P.A. v. Courson,* 312 Ark. 363, 849 S.W.2d 938, 941 (1993); *Fracasse v. Brent,* 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9, 13–14 (1972); *Searcy v. Poletz,* 652 So.2d 366, 368 (Fla.1995); *Greer, Klosik & Daugherty v. Yetman,* 269 Ga. 271, 496 S.E.2d 693, 695 (1998); *In re Estate of Callahan,* 144 Ill.2d 32, 161 Ill.Dec. 339, 578 N.E.2d 985, 989 (1991); *Galanis v. Lyons & Truitt,* 715 N.E.2d 858, 861 (Ind.1999); *In re Harris,* 261 Kan. 1063, 934 P.2d 965, 972 (1997); *Somuah v. Flachs,* 352 Md. 241, 721 A.2d 680, 688 (1998); *Opert v. Mellios,* 415 Mass. 634, 614 N.E.2d 996, 997 (1993); *Ashford v. Interstate Trucking Corp.,* 524 N.W.2d 500, 502 (Minn.Ct.App.1994); *International Materials Corp. v. Sun Corp.,* 824 S.W.2d 890, 894 (Mo.1992); *Adkin Plumbing & Heating Supply Co. v. Harwell,* 135 N.H. 465, 606 A.2d 802, 804 (1992); *Calderon v. Navarette,* 111 N.M. 1, 800 P.2d 1058, 1059 (1990); *Cohen v. Grainger, Tesoriero & Bell,* 81 N.Y.2d 655, 602 N.Y.S.2d 788, 622 N.E.2d 288, 290 (1993); *Fox & Assocs. Co. v. Purdon,* 44 Ohio St.3d 69, 541 N.E.2d 448, 450 (1989); *Hughes v. Cole,* 251 Va. 3, 465 S.E.2d 820, 833 (1996); *Barr v. Day,* 124 Wash.2d 318, 879 P.2d 912, 918 (1994); *Kopelman & Assocs., L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910, 916–17 (1996).

The other jurisdictions allowing quantum meruit recovery have observed that, as a matter of policy, this rule preserves a client's right to discharge his or her attorney at any time. *See, e.g., Galanis,* 715 N.E.2d at 861 (holding that quantum meruit recovery prevents a client from having to pay a percentage fee to more than one attorney). At the same time, the rule preserves the attorney's right to receive some value for the legal services he or she provided. *See id.; see also Fox & Assocs. Co.,* 541 N.E.2d at 450 ("The new rule strikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorney's right to be compensated for services rendered."). Without the remedy of quantum meruit, the client could receive significant value from an attorney's legal services without tendering any payment in return. Allowing quantum meruit recovery serves to protect an attorney from a client who terminates a contingent fee agreement in hopes of depriving the attorney of the portion of the fee provided for in the agreement. *See* Colorado Bar Ass'n Ethics Comm., Use of Conversion Clauses in Contingent Fee Agreements, Formal Op. 100.

Quantum meruit principles may limit recovery in cases where the attorney either

withdraws without cause or is discharged with cause. In such a case, the attorney's misconduct may forfeit his right to earn a fee. *See Somuah*, 721 A.2d at 688 (finding that an attorney may not be entitled to a fee in cases of serious misconduct); *International Materials Corp.*, 824 S.W.2d at 894 (holding that an attorney is not entitled to recover in quantum meruit if the attorney abandons the contract); *White v. McBride*, 937 S.W.2d 796, 803 (Tenn.1996) (prohibiting recovery in quantum meruit under a clearly excessive contingent fee contract violated ethical rules).

Although we fully recognize the wisdom of those jurisdictions that permit quantum meruit recovery without reference to any written agreements, we must comport our decision with the case law in Colorado that requires an attorney to notify a client in advance of the possibility that he or she may seek quantum meruit recovery. This court has previously determined that the client deserves to know that if the fee agreement itself fails for some reason, the client may still have a responsibility to pay the attorney some sum of money. That conclusion is grounded in the notion that the attorney must provide the client with notice about the nature of the financial relationship between the two. He or she is not entitled to rely upon general principles of contract law, in part because the attorney is likely to have a greater understanding of those principles than does the client. The case law and Rules in Colorado require clear written statements of the fee arrangements between the attorney and the client early in the relationship. Even in the area of quantum meruit recovery, which has arisen precisely to address the absence of a written agreement, we feel compelled to honor that precedent by requiring the attorney to provide some notice to the client of the possibility that he or she may seek quantum meruit recovery if the contract fails.

Accordingly, if the agreement explicitly contains notice to the client of the attorney's right to seek quantum meruit recovery, then such recovery may be available depending upon who was at fault and who terminated the employment relationship.[5]

### D.

Having determined that the law permits recovery on a quantum meruit theory if generally contemplated in the agreement, we now return to the facts of this case. This appeal arose out of Judge Heydt's ruling on the attorneys' lien, and we must therefore, determine whether Judge Heydt correctly determined that Judge Cisneros's ruling both invalidated the contingent fee agreement and precluded quantum meruit recovery.

In his order striking the attorneys' lien, Judge Heydt first held the lien unenforceable as a matter of law because Judge Cisneros declared the agreement invalid and this ruling bound Judge Heydt as law of the case under general principles of collateral estoppel. Second, Judge Heydt found that the agreement did not contain language permitting quantum meruit recovery when the agreement itself was invalidated for any reason.

■ Because we have held that quantum meruit may be available even in the face of a noncomplying contingency fee agreement, we need not determine whether Judge Cisneros's ruling bound Judge Heydt.[6] What we do need to determine is whether Frickey could rely upon the language in the agreement indicating that if Dudding terminated the agreement, Frickey could seek recovery "for the value of his services based on an hourly rate" to satisfy the *Elliott* condition of notice to the client.

This language is contractual language that contemplates recovery at law for the hours Frickey expended on the case, irrespective of

---

**5.** The case before us today does not encompass the question of whether substantial performance of the agreement entitles the attorney to the full contingent fee.

**6.** Frickey did not plead quantum meruit in the case before Judge Cisneros. When Frickey did raise quantum meruit in the claim before Judge

Heydt, Dudding did not argue that the claim was precluded because it had not been raised in the earlier proceeding. Accordingly, whether Frickey should be precluded from raising the quantum meruit claim now because of his earlier failure to do so was not preserved and is not now before us.

the outcome. Quantum meruit, as we have discussed, is a very different concept that balances the equities between the parties. This fee agreement makes no mention of quantum meruit, unjust enrichment, or equitable relief. Indeed, the contract includes no reference to the possibility that the attorney may ask a trial court to ascertain the worth of his services in relation to the outcome he obtained. To be sufficient, the agreement must encompass the concept that, if the attorney does not receive the contractual fee for some reason, then he or she may ask a court to weigh the equities of the service provided and determine whether it would be unjust to deny the attorney a fee. The agreement may use the terms of unjust enrichment, equitable recovery, quantum meruit, value of services in relation to outcome, or some other terms that carry the same meaning.

Hence, in this opinion we have held that attorneys may seek quantum meruit recovery even when a contingent fee contract fails, provided that the attorney gave the client some notice in writing of the possibility of a quantum meruit claim. Applying the doctrine, we conclude that the language in Frickey's contingency fee agreement gave insufficient notice to Dudding of the possibility of equitable relief by Frickey in the event that the contract failed.

Accordingly, we reverse the court of appeals' determination that the trial court may consider Frickey's claim for quantum meruit recovery in this case and hold quantum meruit recovery does not apply in this case due to lack of adequate notice to the client. We remand the case with directions to reinstate Judge Heydt's dismissal of the quantum meruit claim and release of the attorneys' lien.