Victoria L. **HANSEL–HENDERSON,** Plaintiff–Appellant,

v.

Steve U. **MULLENS,** Defendant–Appellee.

No. 00CA0915.

Colorado Court of Appeals, Div. II.

Aug. 2, 2001.

Certiorari Granted Feb. 11, 2002.

Law Offices of J.E. Losavio, J.E. Losavio, Max Wilson, John K. Priddy, Denver, CO, for Plaintiff–Appellant.

Fasing Law Firm, P.C., Gregory J. Fasing, Denver, CO, for Defendant–Appellee.

Opinion by Judge NEY.

In this attorney fees dispute, plaintiff, Victoria L. Hansel–Henderson (client), appeals from a judgment entered in favor of defendant, Steven U. Mullens (attorney). We reverse and remand.

Attorney represented client in a workers' compensation claim pursuant to a written twenty-percent contingency fee agreement dated September 1990. During the course of this representation, facts supporting a bad faith claim against the employer were uncovered. The parties agreed that attorney would also represent client in pursuing her bad faith claim on a contingent fee arrangement, but this agreement was not reduced to writing. Attorney asserted that client orally agreed to a contingent fee of forty percent of all amounts recovered on this claim.

In July 1993 the employer and client, using attorney's services, settled both the workers' compensation claim and the bad faith claim in one settlement. Rather than retaining twenty percent of the recovery for the workers' compensation claim, as provided in the written agreement, and forty percent on the bad faith claim, attorney retained as payment of his fees one-third of the combined amount recovered on both claims.

Approximately two years later, client initiated this action. She asserted that attorney was only entitled to fees of twenty percent of the recovery on the workers' compensation claim under their written contingent fee agreement, and that attorney was entitled to no contingent fee on the bad faith claim because they had not entered into a written contingent fee agreement as required by C.R.C.P. ch. 23.3.

After a trial to the court, the court ruled in favor of client on her workers' compensation claim and awarded her the difference between the thirty-three percent retained and the twenty percent as set forth in the parties' contingent fee agreement. This ruling is not contested on appeal.

The trial count also found that the parties orally agreed that attorney would be entitled

to a forty-percent contingent fee for services related to client's bad faith claim. However, because this agreement was not reduced to writing, the court concluded that the agreement was not enforceable. Although the court could not segregate the services performed for the bad faith claim from those performed for the workers' compensation claim, it found that the fees retained by attorney were reasonable under a theory of quantum meruit. This appeal followed.

On appeal, client contends that the trial court erred in permitting attorney to retain the fees he withheld on her bad faith claim under an alternative theory of quantum meruit. We agree.

### I.

■ Attorney contingent fee agreements must be in writing to conform to the Rules of Civil Procedure Governing Contingent Fees. C.R.C.P. ch. 23.3, rule 4(b). At all times relevant to this action, C.R.C.P. ch. 23.3, rule 5 required that contingent fee agreements contain specific information such as: the nature of the claim; "a statement of the contingency upon which the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney"; the percentage to be charged; and provisions regarding the payment of expenses.

C.R.C.P. ch. 23.3, rule 6, which was in effect at the time, mandated that "[n]o contingent fee agreement shall be enforceable by the involved attorney unless there has been substantial compliance with all the provisions of this rule." Thus, C.R.C.P. ch. 23.3 is self-enforcing in that "the sanction for noncompliance by attorneys is the inability to enforce payments by clients." *Elliott v. Joyce*, 889 P.2d 43, 45 (Colo.1994).

■ The strict requirements for the creation of a valid contingent fee agreement, and the unenforceability of invalid contingent fee arrangements, reflect the recognition that such agreements, while necessary and beneficial to clients, are to be carefully regulated. Placing the burden on the attorney reflects the overriding policy in attorney-client relations to hold the attorney responsible for advising the client of the nature of the relationship. *Fasing v. LaFond*, 944 P.2d 608 (Colo.App.1997).

Therefore, because the contingent fee agreement here was not in writing pursuant to C.R.C.P. ch. 23.3, rule 4(b) and did not contain the essential requirements of C.R.C.P. ch. 23.3, rule 5, it was not enforceable. *See, e.g., Beeson v. Industrial Claim Appeals Office*, 942 P.2d 1314 (Colo.App. 1997).

### II.

However, relying on *Beeson v. Industrial Claim Appeals Office, supra*, the trial court ruled that under a theory of quantum meruit the fee retained by attorney under the invalid oral contingent fee agreement would not require disgorgement because the fee was reasonable and justified. This was error.

In *Elliott v. Joyce, supra*, the supreme court interpreted the rules governing contingent fees in the context of a contingent fee agreement that failed to address the issue of fees due when the attorney withdraws from the case. After voluntarily withdrawing, the attorney sought fees from his ex-client under a theory of quantum meruit. The supreme court concluded that C.R.C.P. ch. 23.3 prohibited recovery because the written agreement did not specify that withdrawal (or "mutual abandonment") was a contingency for which the client would be liable.

In *Beeson v. Industrial Claim Appeals Office, supra*, a division of this court reviewed a case in which a contingent fee agreement was not reduced to writing. After the case settled and the attorney retained his fees, the client sought to have the retained fees disgorged. The division ruled that the parties' oral contract was not enforceable pursuant to C.R.C.P. ch. 23.3. However, it permitted the attorney to retain his fees under a theory of quantum meruit, because the attorney was not seeking unpaid fees after being terminated for cause, but, instead, he performed the requested services and the matter was resolved.

In relying upon *Beeson*, the trial court here acknowledged an apparent conflict with *Elliott v. Joyce, supra*, but concluded that because the supreme court denied certiorari

in *Beeson,* it was controlling. *But see* C.A.R. 35(f) ("Denial of certiorari by the Supreme Court shall not necessarily be taken as approval of any opinion of the Court of Appeals."). We conclude otherwise, based on a more recent supreme court decision.

In *Dudding v. Norton Frickey & Associates,* 11 P.3d 441 (Colo.2000), the supreme court ruled that an attorney may seek quantum meruit recovery when the underlying contingent fee agreement fails, but only if the agreement explicitly notifies the client of the attorney's right to seek fees under the theory of quantum meruit. Because the defective contingent fee agreement there did not indicate the possibility of quantum meruit recovery, the attorney could not recover his fees under that theory. *Dudding v. Norton Frickey & Associates, supra,* 11 P.3d at 444 ("quantum meruit recovery can exist independently of a contract—even a nonconforming contract—so long as the attorney provided some initial notice to the client of his option to seek such equitable recovery").

■ Thus, following *Dudding,* we conclude that attorney may recover his fees under a theory of quantum meruit only if the client was notified that attorney could seek such recovery. *See Dudding v. Norton Frickey & Associates, supra,* 11 P.3d at 449 (quantum meruit recovery is available "provided that the attorney gave the client some notice in writing of the possibility of a quantum meruit claim").

■ In this case, there is no evidence of any notification to client that attorney could possibly seek attorney fees under a theory of quantum meruit. Thus, we conclude that: 1) the contingent fee agreement here fails because it was not in writing in conformance with C.R.C.P. ch. 23.3; and 2) attorney could not recover under a theory of quantum meruit because there was no evidence presented that he gave notice to client that he could seek such alternative recovery. To the extent that the rule announced in *Beeson* holds otherwise and is contrary to *Dudding,* we decline to follow it.

Therefore, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion

and to consider any claims for expenses advanced by attorney.

Judge CASEBOLT concurs.

Judge PLANK dissents.

Judge PLANK, dissenting.

I respectfully dissent.

Because I disagree with the conclusion that *Dudding v. Norton Frickey & Associates,* 11 P.3d 441 (Colo.2000), controls the outcome in this case, I respectfully dissent from Part II of the majority opinion.

The majority reads *Dudding* to say that an attorney may be able, under the theory of quantum meruit, to recover attorney fees when a contingent fee agreement fails in circumstances such as those presented here, but only if the client was notified that the attorney could seek such recovery. I do not read *Dudding* so broadly.

It is true that in *Dudding,* the supreme court held that "an attorney may proceed on a quantum meruit claim if that eventuality is outlined in the contingency fee agreement." *Dudding v. Norton Frickey & Associates,* 11 P.3d at 443. On its face, that statement would seem to compel the majority's conclusion. However, in *Dudding,* unlike here, the contingency contemplated by the fee agreement did not occur. There, the client, who was suing his employer, negotiated a return to employment, an eventuality not provided for in the fee agreement. When the attorney attempted to collect one-third of the client's first year's salary as a fee, the client objected and terminated the attorney-client relationship. In such circumstances, it would be inequitable for the attorney to recover in quantum meruit, because the client may not have been aware of such a possibility. *See Dudding v. Norton Frickey & Associates, supra* (client deserves to know that if fee agreement fails, client may still be responsible for paying attorney some sum of money).

Similarly, in *Elliott v. Joyce,* 889 P.2d 43 (Colo.1994), on which the supreme court in *Dudding* relied, the contingency contemplated by the fee agreement did not occur. The attorney withdrew from representation because of an irreconcilable conflict. The su-

preme court held that the attorney could not recover in quantum meruit because the contingent fee agreement did not provide that the client would be liable for payment if the attorney withdrew.

Here, in contrast to both *Dudding* and *Elliott*, the contingency contemplated by the fee agreement was achieved. In such circumstances, the concern addressed in *Dudding* and *Elliott*—that the client may not realize that he or she may be liable for some payment even if the contingency or contingencies outlined in the agreement do not occur—is not implicated.

In *Dudding*, the supreme court repeatedly discussed situations in which the contingency did not occur, either because the client terminated the relationship or because the attorney withdrew from representation. Nowhere in the opinion did the court discuss the circumstance presented here, where the contingency contemplated by the agreement occurred. Indeed, in a footnote the court stated, "The case before us today does not encompass the question of whether substantial performance of the agreement entitles the attorney to the full contingent fee." *Dudding v. Norton Frickey & Associates*, 11 P.3d at 448 n. 5. Here, not only was the agreement substantially performed, it was completely performed.

Furthermore, I find it significant, though not dispositive, that the supreme court in *Dudding* did not expressly overrule or even mention *Beeson v. Industrial Claim Appeals Office*, 942 P.2d 1314 (Colo.App.1997). In that case, the client retained the attorney to represent her on a workers' compensation claim. No written agreement was signed, but the client orally agreed to a contingent fee. Two years after the claim had settled and the attorney had retained his fee, the client sought recovery of the fee on the ground that the agreement did not comply with the rules governing contingent fee agreements, and, therefore, the fee must be disgorged. A division of this court held that, although the agreement was unenforceable because it did not comply with the requirements for contingent fee agreements, the fee was justified under the equitable theory of quantum meruit. Similarly, here, there was an oral contingent fee agreement, the case was successfully settled, attorney retained his fee, and only years later did client object to the fee. Accordingly, I would apply the rationale of *Beeson* in this case.

Attorney, by failing to reduce the contingent fee agreement to writing, violated the Rules of Civil Procedure Governing Contingent Fees. *See* C.R.C.P. ch. 23.3, rule 4(b). As a result, he may be subject to professional discipline. *See In re Wimmershoff*, 3 P.3d 417 (Colo.2000) (attorney was disciplined for, among other things, entering into contingent fee agreement that did not comply with rules governing contingent fee agreements). Therefore, attorney's conduct is not without consequences.

However, attorneys, no less than judges and clients, are human and therefore fallible. In this case, the contingency contemplated by the oral fee agreement occurred, attorney achieved a settlement of over $250,000 on the bad faith claim covered by the oral agreement, and client expressed no displeasure with the fee until years after the matter was settled. Weighing the equities, I would find that under these circumstances, attorney's oversight in failing to reduce the agreement to writing does not warrant forfeiture of all compensation for the services he rendered. *See Beeson v. Industrial Claim Appeals Office, supra.*

The supreme court might well announce that the rule stated in *Dudding* applies even in a case such as this, where the contingency contemplated by an unenforceable fee agreement was fully achieved. However, my reading of the cases convinces me that it as yet has not done so. Accordingly, I dissent.