25CA0213 Sanders v Whitcomb 01-08-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0213
Jefferson County District Court No. 23CV31671
Honorable Christopher C. Zenisek, Judge

---

Denise Sanders,

Plaintiff-Appellee,

v.

Whitcomb, Selinsky, P.C.

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LUM
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

---

The Fields Group LLC, Jerry Douglas Fields, Conifer, Colorado, for Plaintiff-Appellee

Whitcomb, Selinsky, P.C., Joseph A. Whitcomb, Lakewood, Colorado, for Appellant

¶ 1     In this attorney fees dispute, the district court granted Whitcomb, Selinsky, P.C. (WSPC), a $108,000 quantum meruit award for its representation of plaintiff, Denise Sanders, in a personal injury matter.  WSPC appeals the award.  We affirm.

## I.     Background

¶ 2     On October 30, 2022, Kerry Hamilton (the defendant in the underlying case) struck Sanders' car with his own.  Sanders suffered severe injuries in the accident and was hospitalized.  A few days later, Sanders hired WSPC to represent her in her personal injury case against Hamilton.

¶ 3     Sanders and WSPC entered into a contingent fee agreement (CFA).  As relevant here, the CFA contained the following provisions:

- WSPC would receive "35 percent of the gross from any recovery obtained" before, during, or after trial.

- WSPC agreed to advance litigation costs for Sanders' representation, but not her "medical expenses" or "other parties' costs."

- In the event Sanders terminated the CFA "without wrongful conduct by [WSPC]," WSPC "may have a lien for attorney[] fees and costs advanced on all claims and

1

causes of action that are the subject of [Sanders'
representation] under th[e] agreement and on all
proceeds of any recovery obtained (whether by
settlement, arbitration award, or court judgment)."

- If WSPC and Sanders disagreed about WSPC's
  compensation in the event of termination, WSPC had the
  right to request that the court order payment of attorney
  fees "based upon the reasonable value of the services
  provided."

- WSPC's hourly fees for senior attorneys, associate
  attorneys, and paralegals were set at $400, $300, and
  $200, respectively.

¶ 4    On December 14, 2023, WSPC filed Sanders' lawsuit against Hamilton.  Jerry Douglas Fields, a WSPC employee, was the lead attorney assigned to Sanders' case.

¶ 5    On June 18, 2024, WSPC sent Hamilton a statutory offer of settlement in the amount of $2.25 million.  On June 30, Fields indicated to Sanders that he planned to leave WSPC and explained that she had the option to stay with WSPC or continue to be represented by Fields at his new firm.  Sanders informed Fields that

2

she wanted him to continue representing her and instructed him to convey that information to WSPC.

¶ 6    On the morning of July 1, Fields sent an email to WSPC leadership informing them of his resignation and that Sanders intended to follow him to his new firm. About three hours later, Hamilton accepted the settlement offer by email.[1] Later that evening, Sanders sent a text message to WSPC reiterating that on June 30, she "confirmed that [she] wanted to go with [Fields], thereby terminating any affiliation with [WSPC]."

¶ 7    Fields (now with his new firm) took over ongoing tasks related to Sanders' representation, including negotiating the final settlement and release agreement with Hamilton and negotiating the release of Medicare and Medicaid liens. Fields received a check for the settlement proceeds in September 2024 and deposited it into his trust account. However, he couldn't disburse any of the

---

[1] Pursuant to section 13-17-202(1)(a)(IV), C.R.S. 2025, "If an offer of settlement is accepted in writing within fourteen days after service of the offer, the offer of settlement shall constitute a binding settlement agreement, fully enforceable by the court in which the civil action is pending."

proceeds to Sanders until he resolved the liens and completed other related tasks.

¶ 8 Meanwhile, WSPC filed a notice of attorney's lien and a motion to reduce the lien to judgment. WSPC asserted a lien in the amount of the entire contingent fee — $787,500.

¶ 9 After a hearing on WSPC's attorney's lien, the district court made the following relevant rulings:

- WSPC wasn't entitled to its contingent fee under the CFA because the CFA was terminated on July 1 and was therefore inoperative when the contingency was triggered — i.e., when Fields received the funds for deposit into the trust account. Additionally, because there were "a lot of steps to take" after the settlement before Sanders could receive the funds, WSPC hadn't substantially performed the "essential obligations" of the contract when Sanders terminated it.

- In any event, the CFA was unenforceable because it failed to substantially comply with the requirements pertaining to contingent fee agreements under Colo. RPC 1.5.

- Although the CFA was unenforceable, WSPC was nevertheless entitled to recover the reasonable value of the services it rendered under quantum meruit. The court calculated the amount by determining the lodestar value of WSPC's services, applied a multiplier of five after considering the equitable factors set forth in Colo. RPC 1.5(a)(1)-(8), and awarded WSPC $108,000.

¶ 10 WSPC appeals. It asserts that the district court erred by (1) finding that Sanders terminated the CFA before the contingency triggering event; (2) finding that WSPC did not substantially perform; and (3) concluding that $108,000 (rather than the full amount of the contingent fee) was appropriate remuneration for WSPC under quantum meruit.

## II. The CFA Isn't Enforceable

¶ 11 WSPC challenges the district court's conclusion that the CFA was unenforceable under Colo. RPC 1.5. We disagree.

¶ 12 An attorney's contingent fee agreement is not enforceable unless it substantially complies with all provisions in Rule 1.5. Colo. RPC 1.5(c)(6).

¶ 13 The CFA in this case violated Colo. RPC 1.5 because it

- lacked WSPC's signature, Colo. RPC 1.5(c)(2);

- misidentified Sanders' sister as the client, Colo. RPC 1.5(c)(1)(i);

- lacked a statement regarding the possibility that the court could award costs or attorney fees against Sanders, Colo. RPC 1.5(c)(1)(vi);

- lacked a statement advising Sanders of procedures related to the hiring of additional attorneys to assist with the case, Colo. RPC 1.5(c)(1)(viii); and

- lacked a statement that other persons and entities may have a right to be paid from amounts recovered on Sanders' behalf, Colo. RPC 1.5(c)(1)(ix).

¶ 14 WSPC doesn't argue that the court erred by finding that the agreement violated the rule in these respects or by concluding that the violations meant the agreement didn't "substantially compl[y]" with the rule. Instead, WSPC contends, in a single sentence, that a CFA is unenforceable for noncompliance only when an attorney is terminated for cause. WSPC cites no authority — and we can find none — supporting this proposition. Indeed, Rule 1.5(c)(6) plainly says that "*no* contingent fee agreement shall be enforceable" unless

it substantially complies with the rule's provisions. (Emphasis added.) We therefore decline to consider this contention further.

¶ 15 Because the CFA is unenforceable, we review WSPC's first two claims — regarding (1) the termination of the contract and (2) the degree of WSPC's performance and outstanding necessary services at the point of termination — only to the extent those issues affect whether the district court abused its discretion by awarding WSPC $108,000, and not the full contingent fee, under quantum meruit.

### III. Quantum Meruit

¶ 16 Both parties agree — as do we — that in the absence of an enforceable CFA, a court may fashion a remedy under quantum meruit. *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444-45 (Colo. 2000). However, WSPC challenges the district court's reliance on the lodestar method to calculate the $108,000 fee award. Relying on *Mullens v. Hansel-Handerson*, 65 P.3d 992 (Colo. 2002), WSPC argues that the correct amount under quantum meruit is $787,500 (the full amount of the fee contemplated by the CFA). We disagree.

## A. Legal Principles

### 1. Generally Applicable Law and Standard of Review

¶ 17    "Quantum meruit is a theory of contract recovery that invokes an implied contract when the parties either have no express contract or have abrogated it." *Dudding*, 11 P.3d at 444. "Quantum meruit strikes the appropriate balance by gauging the equities and ensuring that the party receiving the benefit of the bargain pays a reasonable sum for that benefit." *Id.* at 445.

¶ 18    An attorney may seek quantum meruit recovery if an underlying contingent fee agreement is unenforceable. *Id.* at 444-45. To recover in quantum meruit, an attorney must demonstrate that (1) at their expense; (2) the client received a benefit; (3) under circumstances that would make it unjust for the client to retain the benefit without paying the attorney. *Id.* at 445; *see also Mullens*, 65 P.3d at 999 (Colo. 2002) ("Not allowing an attorney to receive reasonable payment for completing legal services . . . to the benefit of the client, under a good faith belief that he would receive an agreed[-]upon compensation for his services, solely because the contract was [deficient,] is inequitable and unjustly enriches the client.").

¶ 19 A lodestar analysis is one way for a court to determine the reasonable value of an attorney's services when faced with an unenforceable fee agreement. *Est. of McClain v. Killmer, Lane & Newman, LLP*, 2024 COA 50, ¶ 105. The court first calculates the lodestar amount, which is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18. The court may then adjust the amount after considering the factors set forth in Colo. RPC 1.5(a), including difficulty of the questions involved, the skill required to perform the legal services, the amount involved and results obtained, the nature and length of the attorney-client relationship, and whether the fee is fixed or contingent. *Tisch v. Tisch*, 2019 COA 41, ¶ 84; Colo. RPC 1.5(a).

¶ 20 Because quantum meruit is an equitable doctrine, *Dudding*, 11 P.3d at 445, we review the trial court's "application of the correct test" for an abuse of discretion, *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). However, we review de novo whether the trial court "correctly understood the appropriate test" for quantum meruit. *Id.*

## 2.    *Mullens*

¶ 21    In *Mullens*, an attorney entered into an oral contingent fee agreement with his client.  65 P.3d at 994.  After three years of work, the attorney secured a $262,440 settlement.  *Id.*  The client accepted the amount, and the attorney retained the contingent fee (forty percent of the settlement) as agreed.  *Id.*

¶ 22    Two years later, the client attempted to recover the fee from the attorney.  *Id.*  Relying on *Dudding*, 11 P.3d at 448, a division of this court concluded that the attorney was required to return the entire fee to the client because the agreement didn't provide the client with "written notice that payment for legal services was required even if the services were not completed."  *Mullens*, 65 P.3d at 997-98.  The Colorado Supreme Court reversed.  *Id.* at 999-1000.  It concluded that the rule announced in *Dudding*, 11 P.3d at 444, 448 — that an attorney may only seek quantum meruit recovery if the agreement contains written notice to the client of that possibility — didn't apply when the agreed-upon services had been completed.  *Mullens*, 65 P.3d at 998-99.  Because the attorney's services were completed, the court determined that the attorney

"may be compensated under quantum meruit for the reasonable worth of the legal services he provided to" the client. *Id.* at 999.

### 3. *McClain*

¶ 23     In *McClain,* a division of this court considered whether the district court abused its discretion by awarding a law firm the full amount of its contingent fee when the client terminated the firm for cause before the case was resolved. *McClain,* ¶¶ 16-17, 87-89. The firm argued that *Mullens* supported the district court's award*. McClain,* ¶ 99.

¶ 24     The division concluded that, while the firm could recover an appropriate fee under quantum meruit*, Mullens* could not support an award of the full fee because the facts differed from *Mullens* in significant respects. *McClain,* ¶¶ 100, 105. First, unlike *Mullens,* the client in *McClain* terminated the firm for cause*. McClain,* ¶ 100. And second, while the attorney in *Mullens* had fully performed the contract and the client had received payment of the settlement proceeds, the client terminated the *McClain* agreement before any event triggered the contingency. *McClain,* ¶¶ 100, 115.

¶ 25     The division further concluded that an award of the full contingent fee was inconsistent with the language of the firm's

contingent fee agreement, which contemplated a lodestar analysis if the client terminated the agreement before the contingency was triggered. *Id.* at ¶ 101. Finally, the division noted that awarding the full contingent fee "using a quantum meruit rubric would effectively impose the . . . contingent fee of the unenforceable [contingent fee agreement]. We cannot sanction such an end run around the ethical rules governing contingent fee agreements." *Id.* at ¶ 103. The division therefore reversed the district court's award. *Id.* at ¶ 104.

## B.  Analysis

¶ 26    WSPC argues that it should receive the full contingent fee. It contends that, like the attorney in *Mullens*, it provided complete legal services by obtaining a substantial settlement for Sanders. We disagree.

¶ 27    First, contrary to WSPC's contention, *Mullens* does not mandate an award of the full contingent fee to an attorney who has fully performed their services. At best, *Mullens* stands for the proposition that a court *may* award the entire contingent fee if the services have been completed and if such a fee represents "the reasonable worth of the legal services" the attorney provided to the

12

client.  65 P.3d at 999-1000; *see also Beeson v. Indus. Claim Appeals Off.*, 942 P.2d 1314, 1316-17 (Colo. App. 1997) (affirming an order of the Industrial Claim Appeals Panel allowing attorney to retain contingent fee despite unenforceable fee agreement when there was substantial evidence that the attorney fee "reflected the reasonable value of his services").

¶ 28     Next, we note that the facts of this case fall somewhere between *Mullens* and *McClain*.  Like *Mullens* (and unlike *McClain*), Sanders didn't terminate WSPC for cause.  *See Mullens*, 65 P.3d at 993-94; *McClain*, ¶ 36.  But unlike *Mullens*, Sanders terminated the agreement before the earliest possible contingency triggering event: Hamilton's acceptance of the statutory settlement offer on the afternoon of July 1.  *Cf. Mullens*, 65 P.3d at 994.

¶ 29     WSPC contends that Fields' July 1 email was insufficient to effectuate termination of the CFA, but we disagree.  The court found, with record support, that Fields acted as Sanders' agent when he emailed his resignation to WSPC and informed WSPC that Sanders would follow him to his new firm.  WSPC argues that the resignation didn't contain "definitive language terminating WSPC's representation," but the CFA requires no specific language.  The

email explained clearly that Sanders would be represented by Fields from that point onward and noted that Fields would need to "gather[] the files of the clients," including Sanders, who were going with him. We agree with the district court that this was sufficient notice that Sanders wished to terminate WSPC's representation.

¶ 30 WSPC also argues that termination could only be effectuated by written notice mailed to its business address. But this contention is unsupported by the CFA's plain language, which says only, "Client may discharge [WSPC] at any time by written notice effective when received by [WSPC]."

¶ 31 The district court also found, again with record support, that WSPC hadn't completed all necessary services at the time Sanders terminated the CFA. Unlike *Mullens*, 65 P.3d at 994, 999, where performance of the contingent fee agreement was complete and the client had received the settlement proceeds, Sanders' case still required work, including negotiating the final settlement and release agreement, resolving medical liens, and structuring the settlement and creating a special needs trust to protect Sanders' public benefits eligibility. In fact, at the time of the hearing on WSPC's attorney's lien, Sanders had not yet received any

14

disbursement of settlement proceeds because Fields was still working on some of those items.

¶ 32    We also note that, like *McClain*, an award of the full contingent fee would be inconsistent with the terms of the CFA.  *See McClain*, ¶ 101.  The CFA states that if Sanders terminates the agreement "without wrongful conduct by [WSPC]," WSPC may recover a fee "based upon the reasonable value of the services provided."  And if Sanders and WSPC disagreed about the amount of such recovery, WSPC could request that the court determine the fee based on the "nature and complexity of [Sanders'] case, the time and skill devoted to [Sanders'] case by [WSPC], and the benefit obtained by [Sanders] as a result of [WSPC's] efforts."  In other words, even if the CFA were enforceable, it still directs the district court to apply a lodestar analysis.  *See id.* at ¶¶ 101-02.

¶ 33    Having concluded that the CFA was unenforceable, the district court was tasked with determining a reasonable fee for WSPC's services.  *See id.* at ¶ 102; *Mullens*, 65 P.3d at 999.  And under these circumstances, we can't conclude that the district court erred by using the lodestar method to determine the reasonable fee.  *See, e.g., McClain*, ¶¶ 102, 105; *Law Offs. of J.E. Losavio, Jr. v. Law Firm*

15

*of Michael W. McDivitt, P.C.*, 865 P.2d 934, 936 (Colo. App. 1993); *cf. Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 571 (Colo. App. 2010) ("When reviewing contingent fee agreements for reasonableness . . . , our courts have tested the contracts against the quantum meruit standard and determined whether the services to be performed were reasonably worth the amount stated in the agreement by considering" certain factors in Colo. RPC 1.5(a)(1)-(8). (citation modified)).  Further, to the extent the district court concluded that awarding the full contingent fee to WSPC would be inequitable because it would "sanction . . . an end run around the ethical rules," *see McClain*, ¶ 103, we perceive no abuse of discretion.

¶ 34    Finally, we perceive no abuse of discretion in the district court's application of the lodestar method.  It appropriately calculated the initial lodestar amount based on evidence in the record regarding the hours WSPC expended on the case and WSPC's hourly rates.  Then it considered the factors in Colo. RPC 1.5(a)(1)-(8), ultimately adjusting the lodestar amount by a factor of five to account for the case's complexity, WSPC's required skill, and the "considerable risk" that WSPC undertook in representing

16

Sanders due to the contingent fee. *See Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) ("[A] multiplier of 2.3 times the lodestar is well within the range of fees customarily awarded in complex litigation.").[2]

## IV. Disposition

¶ 35    The judgment is affirmed.

JUDGE TOW and JUDGE MOULTRIE concur.

---

[2] To the extent the district court concluded that it didn't have discretion to award the full contingent fee, it erred. However, given the disparity between the full contingent fee ($787,500) and the amount the court concluded was the reasonable value for WSPC's services ($108,000), it is clear the court wouldn't have awarded the entire contingent fee even if it concluded it could have done so because the contingent fee didn't reflect the "reasonable worth of [WSPC's] legal services." *Mullens v. Hansel-Handerson*, 65 P.3d 992, 999 (Colo. 2002). For that reason, any error is harmless.